IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KARENA VAN HOOK, JANNA ANDERSON, RAQUESIA MCLEAN, DELISHA WATKINS, MICHAELA HARRIS and EBONY YARBROUGH, <br><br> **Plaintiffs,** <br><br> **vs.** <br><br> VERONICA ENTERPRISES, INC. d/b/a DIAMONDS OF ATLANTA, VERONICA JONES, and CARMEN POPOVITCH, <br><br> **Defendants.** | Civil Action No. _____ |

## **COMPLAINT**

COME NOW Plaintiffs Karena Van Hook, Janna Anderson, Raquesia McLean, Delisha Watkins, Michaela Harris and Ebony Yarbrough, by and through their attorneys, and assert claims against Defendants Veronica Enterprises, Inc. d/b/a Diamonds of Atlanta, Veronica Jones, and Carmen Popovitch under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), for due but unpaid minimum wages and other relief on the grounds set forth as follows:

## INTRODUCTION

### 1.

This is an action brought pursuant to the Fair Labor Standards Act, 29 U.S.C.

§ 201 *et seq.* by Plaintiffs, who were formerly employed by Defendants as exotic

dancers at Defendants' business, Diamonds of Atlanta.

## JURISDICTION AND VENUE

### 2.

The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 216(b) and 28

U.S.C. § 1331.

### 3.

Venue properly lies in the Northern District of Georgia pursuant to 28 U.S.C.

§ 1391 because Defendants Veronica Enterprises' principal office address is

located in this judicial district, Defendants Jones and Popovitch reside in this

judicial district, and a substantial portion of the events giving rise to the claims

herein arose in this judicial district.

**PARTIES**

4.

Plaintiff Karena Van Hook ("Van Hook") is a natural person and former employee of Defendants, having been employed from on or about April 10, 2015 to on or about July 13, 2015.

5.

Plaintiff Janna Anderson ("Anderson") is a natural person and former employee of Defendants, having been employed from approximately May of 2013 until May 2016.

6.

Plaintiff Raqueshia McLean ("McLean") is a natural person and former employee of Defendants, having been employed from approximately mid 2014 through May 2016.

7.

Plaintiff Delisha Watkins ("Watkins") is a natural person and former employee of Defendants, having been employed from approximately April 2014 through May 2016.

8.

Plaintiff Michaela Harris ("Harris") is a natural person and former employee of Defendants, having been employed from approximately August 2013 through February 2014.

9.

Plaintiff Ebony Yarbrough ("Yarbrough") is a natural person and former employee of Defendants, having been employed from approximately 2012 through April 2016.

10.

Defendant Veronica Enterprises, Inc. d/b/a Diamonds of Atlanta ("Veronica Enterprises") is a domestic corporation existing under the laws of the State of Georgia and is subject to the jurisdiction of this Court. Veronica Enterprises may be served with process via service on its registered agent for service, Carmen Popovitch, at 10625 Roxburgh Lane, Roswell, GA, 30076.

11.

Defendant Veronica Enterprises is subject to the personal jurisdiction of this Court.

12.

Defendant Veronica Jones ("Jones") is a natural person. Jones may be served with process at her residence in DeKalb County, Georgia, or wherever she may be found.

13.

Defendant Jones is subject to the personal jurisdiction of this Court.

14.

Defendant Popovitch is a natural person. Popovitch may be served with process at her residence in Fulton County, Georgia, or wherever she may be found

15.

Defendant Popovitch is subject to the personal jurisdiction of this Court.

## COMMON FACTUAL ALLEGATIONS

16.

During the three years prior to the filing of this action (hereinafter "the Relevant Time Period") Defendants owned and operated Diamonds of Atlanta, an Atlanta, Georgia nightclub featuring nude female dancers (hereinafter "the Club").

17.

Individual Defendant Jones was CEO, CFO, and Secretary of Veronica Enterprises

from the beginning of the Relevant Time Period until approximately June 2016.

18.

At all times during the Relevant Time Period until approximately June 2015,

Individual Defendant Jones was involved in the day-to-day operation of the Club.

19.

Individual Defendant Popovitch has been CEO, CFO, and Secretary of Veronica

Enterprises since approximately June 2015.

20.

At all times during the Relevant Time Period since approximately June 2015,

Individual Defendant Popovitch has been involved in the day-to-day operation of

the Club.

21.

At all times during the Relevant Time Period, the Club was an "enterprise engaged

in commerce or in the production of goods for commerce" as defined in the FLSA,

§ 6(a), 29 U.S.C. § 206 (a).

22.

At all times during the Relevant Time Period, the Club was an enterprise engaging in interstate commerce by having multiple employees regularly selling alcoholic beverages produced and shipped from outside of the State of Georgia, regularly serving foods produced and shipped from outside of the State of Georgia, and having multiple employees regularly processing out-of-state credit card sales in the furtherance of its business.

23.

During 2016, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

24.

During 2015, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

25.

During 2014, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

26.

During 2013, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

27.

At all times during the Relevant Time Period, the Club had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

28.

At all times during the Relevant Time Period, the Club directly and indirectly controlled dancers' work schedules by requiring them to work a minimum number of shifts, which must include at least one shift on a "slow day," or pay a monetary penalty for failure to do so.

29.

At all times during the Relevant Time Period, the Club's house moms and managers had the authority to require dancers to change their attire prior to being permitted to work.

30.

At all times during the Relevant Time Period, the Club's house moms and managers had the authority to require dancers to change their hairstyle prior to being permitted to work.

31.

At all times during the Relevant Time Period, the Club's house moms and managers had the authority to require dancers to change their makeup prior to being permitted to work

32.

At all times during the Relevant Time Period, the Club's managers had the authority to suspend and discipline dancers.

33.

At all times during the Relevant Time Period, the Club's managers supervised dancers on a day-today basis.

34.

At all times during the Relevant Time Period, the Club required dancers to attend meetings led by a Club manager.

35.

At all times during the Relevant Time Period, the Club used mandatory dancer meetings to discuss problems with dancer dress, hair, makeup, weight, and appearance, as well as Club promotional efforts.

36.

At all times during the Relevant Time Period, the Club paid all costs associated with advertising marketing, and promoting the Club.

37.

At all times during the Relevant Time Period, the Club required Club customers to pay a "door fee" to enter the business and thus had ultimate authority as to which individuals were allowed to enter the Club as customers.

38.

At all times during the Relevant Time Period, the Club's managers and house moms had the discretion not to permit a dancer to perform if she arrived to a scheduled shift after a certain time.

39.

At all times during the Relevant Time Period, the Club's DJ's have given dancers instructions to remove clothing while on stage.

40.

At all times during the Relevant Time Period, the Club's DJ's called dancers to dance on stage on a set rotation established by the dancers' time of arrival.

41.

At all times during the Relevant Time Period, the Club enforced a mandatory check-out process for the Club's dancers.

42.

At all times during the Relevant Time Period, the Club posted written rules of conduct for dancers in their dressing room.

43.

At all times during the Relevant Time Period, the duties of Club management included ensuring that dancers complied with Club rules and policies.

44.

At all times during the Relevant Time Period, the Club provided all stages used for dancer performances at the Club.

45.

At all times during the Relevant Time Period, the Club provided all poles used for dancer performances at the Club.

46.

At all times during the Relevant Time Period, the Club was responsible for day-to-day purchases of liquor for sale at the Club.

47.

At all times during the Relevant Time Period, the Club did not require the Club's dancers to have prior experience as dancers or any formal training.

48.

At all times during the Relevant Time Period, when an individual wanted to work as a dancer at the Club, a house mom and manager generally performed a "body check" to determine if the individual's body was suitable for performing at the Club.

49.

At all times during the Relevant Time Period, Defendants required Plaintiffs to work a minimum number of days per week, including a minimum number of "slow days," or pay fines.

50.

At all times during the Relevant Time Period, the Club advertised its business using pictures of scantily clad women.

51.

At all times during the Relevant Time Period, the presence of nude dancers was integral to the Club's business success.

52.

At all times during the Relevant Time Period, Plaintiffs did not have their own business entities related to their dance work.

53.

At all times during the Relevant Time Period, Plaintiffs were "employees" as that term is used in the FLSA, rather than independent contractors, as a matter of economic reality.

54.

At all times during the Relevant Time Period, Defendants were Plaintiffs' "employers" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

55.

At all times during the Relevant Time Period, Plaintiffs were not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

56.

At all times during the Relevant Time Period, Defendants paid Plaintiffs no wages.

## COUNT ONE

## VIOLATION OF 29 U.S.C. §§ 206 AND 215

57.

Paragraphs 1 through 56 are incorporated herein by this reference.

61.

At all times material hereto, Plaintiffs were employees covered by the FLSA and

entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C.

§ 206(a).

58.

At all times material hereto, Defendants failed to compensate Plaintiffs at an

hourly rate above or equal to the minimum wage.

59.

At all times material hereto, Defendants willfully failed to compensate Plaintiffs at

an hourly rate above or equal to the minimum wage.

60.

Plaintiffs are entitled to payment of their minimum wages in an amount to be

determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

61.

Defendants' requirement that Plaintiffs pay fees and fines to the Club and its

managers, house moms, and DJs violated the "free and clear" requirement of 29 CFR 531.35.

62.

Plaintiffs are entitled to receive all unpaid minimum wages from Defendants for the hours that they worked.

63.

Plaintiffs are entitled to recover from Defendants all fees and fines that they were required to pay in order to work at the Club.

64.

As a result of Defendants' willful underpayment of minimum wages as alleged above, Plaintiffs are entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

65.

As a result of its underpayment of minimum wages as alleged above, Defendants are jointly and severally liable to Plaintiffs for their litigation costs, including their reasonable attorney's fees, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiffs request that this Court:

a.  Take jurisdiction of this matter;

b.  Grant a trial by jury as to all matters properly triable to a jury;

c.  Issue an Order holding Defendants to be Plaintiffs' "employers" as that term
is defined under the FLSA;

d.  Issue an Order declaring that Plaintiffs were covered by the minimum wage
provisions of the FLSA and that Defendants have failed to comply with
the requirements of the FLSA;

e.  Award Plaintiffs an amount to be determined at trial against Defendants in
unpaid minimum wages due under the FLSA;

f.  Award Plaintiffs liquidated damages in the same amount as their unpaid
minimum wages;

g.  Award Plaintiffs prejudgment interest on all amounts owed;

h.  Award Plaintiffs nominal damages;

i.  Award Plaintiffs their reasonable attorney's fees and costs of litigation; and

j.  Award any and such other relief this Court deems just, equitable and proper.

Respectfully submitted, this 29th day of July 2016.

AINSWORTH G. DUDLEY, ATTORNEY
AT LAW

/s/ Ainsworth G. Dudley
Ainsworth G. Dudley
Georgia Bar No. 231745

4200 Northside Parkway
Bldg. 1, Ste. 200

Atlanta, GA 30327
404.687.8205
adudleylaw@gmail.com

                                        **DELONG, CALDWELL, BRIDGERS,**
                                        **FITZPATRICK & BENJAMIN, LLC**

3100 Centennial Tower                   */s/ Charles R. Bridgers*
101 Marietta Street NW                  Charles R. Bridgers
Atlanta, GA 30303                       Georgia Bar No. 080791
404.979.3150
404.979.3170 (fax)                      */s/ Matthew W. Herrington*
charlesbridgers@dcbflegal.com           Matthew W. Herrington
matthew.herrington@dcbflegal.com        Georgia Bar No. 275411